## Pearl Estate

*Albert J. Taylor*, for accountant.

*Ralph C. Busser, Jr.*, for residuary legatee.

*Alfred D. Whitman*, for *Harrington Adams*, acting Attorney General.

LEFEVER, J., January 22, 1959.—This trust arose under the will of Miriam Pearl, who died May 28,

1956. Thereby, she bequeathed and devised her entire net estate to her executrix, in trust, to invest and reinvest the same, and to collect the income therefrom and after paying all expenses, "to pay to my beloved husband, Albert Pearl, for and during the term of his natural life, the net income up to and including the sum of Sixty Dollars per month. In the event said net income should be more than Sixty Dollars per month, then I direct that any amount over and above the said Sixty Dollars per month shall fall into and become part of the principal of my Trust Estate. Should said net income be less than Sixty Dollars per month, then I direct my said TRUSTEE to use and consume so much of the principal of my said Trust Estate as will insure the payment of Sixty Dollars per month to my said husband, ALBERT PEARL. It is my intention by the terms of this TRUST to limit my Husband solely to a net income of Sixty Dollars per month." Upon the death of her husband, testatrix gave any unconsumed portion of the principal as follows: $5,000 to Mrs. Bertha West, clear of tax, provided she survived decedent's husband, and she did; and the remaining balance, two-thirds thereof to the Messiah Evangelical Church, and one-third thereof to the Philadelphia Home for Incurables.

The fund before the court was awarded to the accountant-trustee by adjudication of Judge Bolger, filed March 28, 1957. In that adjudication he stated: "It is noted that the testatrix died within thirty days of the date of her will, and it is stated that by a prior will, dated August 7, 1951, she gave a one-quarter share of residue to both the Philadelphia Home for Incurables and the Messiah Evangelical Church. However, in view of the existing legal life estate determination of the effect of this prior will is not being made at this time."

The present account has been filed because of the death of Albert Pearl, life tenant, on August 10, 1958.

Notice of the audit has been given to Bertha West, and to the two named charitable remaindermen. Notice was also given to the Attorney General of the Commonwealth of Pennsylvania.

In paragraph (g) of the statement of proposed distribution, the accountant points out: (1) That testatrix died within 30 days of the execution of said will; and (2) that by her earlier will of August 7, 1951, she left her estate in trust, with a limited life estate for her husband similar to that provided in the last will, and remainders upon his death, as follows: One-half to the same church, The Messiah Evangelical Church, and one-fourth each to Bertha West and the same other charity, Philadelphia Home for Incurables. Accountant states that the aforesaid home and church recognize the validity of the will of May 7, 1956, and agreed "that after payment of the legacy of $5,000 to Bertha West, the residue of the estate shall be divided one-third to the Philadelphia Home for Incurables and two-thirds to The Messiah Evangelical Church in accordance with Section 7(1) of the Wills Act of 1947."

Section 7(1) of the Wills Act of April 24, 1947, P.L. 89, 20 PS §180.7, provides inter alia:

"Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. . . . Unless the testator directs otherwise, if such a will or codicil shall revoke or supersede a prior will or codicil executed at least thirty days before the testator's death, and not theretofore revoked or superseded and the original of which can be produced in legible condition, and if each instrument shall contain an identical gift for substantially the same religious or charitable purpose, the gift in

the later will or codicil shall be valid; or if each instrument shall give for substantially the same religious or charitable purpose a cash legacy or a share of the residuary estate or a share of the same asset, payable immediately or subject to identical prior estates and conditions, the later gift shall be valid to the extent to which it shall not exceed the prior gift."

The identical religious or charitable legatees were named as remaindermen in both the earlier will and the later, probated, will in the instant case. Moreover, the same individual, Mrs. Bertha West, is a beneficiary under both wills, viz., under the earlier will she receives a one-fourth share in remainder and under the later will she is given an outright bequest of $5,000. Does the interposition of this money legacy to Mrs. West, a preferential interest in remainder over that of the fractional shares in the residue provided for the charities, prevent validation of the gifts to the charities under the last sentence of section 7(1) of the Wills Act.

In McGuigen Estate, 388 Pa. 475, the Supreme Court in passing upon section 7(1) of the Wills Act of 1947, and reviewing the law as it existed prior thereto, stated at pages 481-82: ". . . it is clear that (the aforesaid section of the Act) should be liberally construed in order to effectuate the object of the Act which was to modify the prior harsh law and to promote justice: Martin Estate, 365 Pa. 280, 283, 74 A. 2d 120; Section 58 of the Statutory Construction Act of 1937, 46 PS 558, which by its terms includes future acts such as the Wills Act of 1947 and requires a liberal instead of a strict construction thereof in order 'to effect their objects and to promote justice'."

In the instant case testatrix in both wills designated the identical charities, and the same individual, to participate in the remainder estate following the death of her husband. The status of her estate was

similar at the time she made both wills. The ratio of interest in her estate between the charities is the same. It follows that this testatrix did not superimpose such different provisions in respect to her charitable bequests as would prevent the application of the statute. The husband, who elected to accept the provisions of the instant will, and his heirs have no standing to object. On the facts of the case, the charities receive less under the later will than under the earlier will. Accordingly, the gifts to the charities under the later will are valid.

The awards requested by accountant and agreed to by the very parties whom testatrix had named to take the remaining residue of her estate after the death of her husband, will accordingly be made. . . .

And now, to wit, January 22, 1959, the account is confirmed nisi.