Allentown Wholesale Grocery Company *v.* Commonwealth.

Argued March 8, 1972, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*Dean A. Weidner,* with him *Sherill T. Moyer,
Frank A. Sinon* and *Rhoads, Sinon & Reader,* and, of
counsel, *Whisler, Pearlstine, Talone, Craig & Garrity,*
for appellant.

*M. David Smeltz,* Deputy Attorney General, for ap-
pellee.

Opinion by Judge Mencer, May 25, 1972:

Allentown Wholesale Grocery Company (Allen-
town) is a Pennsylvania corporation engaged in the
business of wholesale food distribution. Allentown
timely filed its capital stock and corporate net income
tax reports for its fiscal year which commenced Decem-
ber 29, 1968 and ended December 27, 1969. In its re-
ports Allentown calculated its capital stock tax at the
rate of six mills and its corporate net income tax at

the rate of seven per centum. In settlement of these taxes the Department of Revenue, with approval of the Auditor General, considered Allentown to be on a calendar year accounting basis commencing January 1, 1969 and ending December 31, 1969 and subject to a capital stock tax rate of seven mills and a corporate net income tax rate of twelve per centum.

Allentown protested the increased tax rates by filing Petitions for Resettlement with the Secretary of Revenue and the Auditor General which were refused. Allentown then filed Petitions for Review with the Board of Finance and Revenue which were denied by orders dated July 28, 1971 and thereafter filed and perfected these two appeals from said orders.

A jury trial has been waived in accordance with the provisions of section 1 of the Act of April 22, 1874, P. L. 109, 12 P.S. §688. The parties have entered into a stipulation of facts. We adopt the stipulation as our findings of fact and incorporate the same herein by reference. In the course of this opinion we will discuss those facts which, in our judgment, are essential to the disposition of this case.

On March 15, 1966, Allentown filed a Certification of Change in Filing Period with the Secretary of Revenue. The certification, filed pursuant to section 702 of The Fiscal Code of 1929, Act of April 9, 1929, P. L. 343, as amended, 72 P.S. §702, provides that Allentown's fiscal year ends on the Saturday which last occurs in December of each year. Allentown thereafter commenced a 52-53 week annual fiscal year accounting period and made its tax reports on that basis.

A 52-53 week year is an accounting period which does not necessarily end on the last day of any month. The period ends on the same day of the week, 52 or 53 weeks after the beginning of the period which may begin during any calendar month. The use of the 52-

53 week year permits a corporation to divide a calendar year into thirteen uniform and more comparable periods of time to facilitate the keeping of accounting records.

The sole question here is whether the 52-53 week accounting period constitutes a fiscal year basis or a calendar year basis of accounting.

In *McGinness Unemployment Compensation Case,* 177 Pa. Superior Ct. 104, 109, 110 A. 2d 918 (1955), the Superior Court stated:

"Webster's New International Dictionary, 2nd Edition, Unabridged, states that 'calendar . . . year . . . is divided into 12 calendar months, and is now reckoned as beginning with January 1 and ending with December 31.'

"This is so commonly accepted as the meaning of 'calendar year' that any other conception of the term is hardly worthy of discussion."

"Fiscal year" is defined in the same *Webster's New International Dictionary,* Second Edition, Unabridged, as "[t]he year by or for which accounts are reckoned, or the year between one annual time of settlement or balancing of accounts, and another".

The definition of "fiscal year" for federal tax purposes is found in section 441(e) of the Internal Revenue Code of 1954, as amended, 26 U.S.C.A. §441(e):

"Fiscal year. . . . In the case of any taxpayer who has made the election provided by subsection (f), the term means the annual period (varying from 52 to 53 weeks) so elected."

The Act of May 28, 1937, P. L. 1019, art. VIII, §101(43), as amended, 46 P.S. 601(43), states that "fiscal year" when used in any law enacted after passage of the Act, as amended, unless the context clearly indicates otherwise, shall mean "the year by or for which accounts are reckoned."

In the absence of a legislative definition clearly indicating otherwise, we find the authorized 52-53 week accounting period to be a fiscal year basis of accounting and not a calendar year basis which is limited to beginning with January 1 and ending with December 31.

Section 2 of the Act of December 31, 1969, P. L. 407, amended section 3 of the Act of May 16, 1935, P. L. 208, 72 P.S. §3420c, known as the "Corporate Net Income Tax Act," by increasing the corporate net income tax rate from seven per centum to twelve per centum per annum ". . . upon each dollar of net income of such corporation received by and accruing to such corporation during the calendar years one thousand nine hundred sixty-nine and each year thereafter, *except* where a corporation reports to the Federal Government on the basis of a *fiscal year* and has certified such fact to the department as required by section four of this act, *in which case* such tax at the rate of twelve per centum shall be levied, collected and paid upon all net income received by and accruing to such corporation during *each fiscal year commencing during the calendar year one thousand nine hundred sixty-nine and each year thereafter. . . ."* (Emphasis supplied.)

Section 3 of the Act of December 31, 1969 provided: "This act shall become effective immediately, and shall apply to tax imposed for calendar year 1969 and thereafter, or for fiscal years beginning in 1969 and thereafter, and shall not be construed to alter the liability of any corporation to report and pay the tax imposed by the Corporate Net Income Tax Act prior to this amendment for the calendar year ending the thirty-first day of December, 1968 and years prior thereto or fiscal years beginning in 1968 and years prior thereto."

We are of the opinion that this statutory language clearly expresses that the General Assembly intended that the tax rate increase should apply to corporations on a fiscal year basis only for each fiscal year commencing during the 1969 calendar year and each year thereafter. Allentown's fiscal year in question commenced on December 29, 1968. This statutory language is not vague, ambiguous or in any respect wanting in clarity. The Commonwealth admits that Allentown "reports to the Federal Government on the basis of a fiscal year" and that Allentown "has certified such fact to the Department." We can only conclude that the increased tax rates imposed by the Corporate Net Income Tax Act for fiscal years beginning in -969 are not applicable to Allentown for its fiscal year commencing December 29, 1968.

Section 1 of the Act of December 31, 1969, P. L. 419, 72 P.S. §1871(b), by language comparable in all material respects to the language used in the amendment above discussed relative to the Corporate Net Income Tax Act, increased the capital stock tax rate from six mills to seven mills ". . . for the calendar year one thousand nine hundred sixty-nine and *the fiscal year beginning in one thousand nine hundred sixty-nine and each year thereafter.* . . ." (Emphasis supplied.)

We are guided in analyzing the statutory provisions here applicable by certain well settled principles of statutory construction which were enunciated by Mr. Chief Justice (then Justice) JONES in *Commonwealth v. Rieck Investment Corporation,* 419 Pa. 52, 59, 60, 213 A. 2d 277 (1965), "(a) that a taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer (Statutory Construction Act of May 28, 1937, §58(3), P. L. 1019, 46 P.S. §558; Commonwealth v. Willson Products, Inc., 412 Pa. 78, 83, 84, 194 A.

2d 162); (b) even though a court may be convinced that the legislature intended to enact something different from that which it did, if the language of the statute is clear and unambiguous the statute must be given its plain and obvious meaning (Statutory Construction Act, supra, §51, 46 P.S. §551; Farmers Kissinger Market House Co., Inc. v. Reading, 310 Pa. 493, 498, 165 A. 398); (c) the ' "legislature must be intended to mean what it has plainly expressed . . . . It matters not, in such a case, what the consequences may be" ' (Orlosky v. Haskell, 304 Pa. 57, 62, 155 A. 112); (d) it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include (Olyphant Borough School District v. American Surety Co., 322 Pa. 22, 28, 184 A. 758; Kusza v. Maximonis, 363 Pa. 479, 482, 70 A. 2d 329)."

Further, we have examined the record in this case and are unable to reconcile the Commonwealth's contention that Allentown is not on a fiscal year accounting basis with the following exhibits and testimony by the Commonwealth's only witness:

(1)   The Certification of Change in Filing Period attached to the Stipulation of Facts as Exhibit A is a document filed by corporate taxpayers on a form supplied by the Pennsylvania Department of Revenue. Allentown's Certification of Change in Filing Period provides in relevant part that Allentown's "fiscal year closes . . . not regularly upon the last day of any other calendar month, but upon . . . the Saturday which last occurs in December."

(2)   The Stipulation of Facts and Agreement To Try Without Jury entered into and agreed to by the Commonwealth provides in paragraph 4 thereof that the tax report was made "for the fiscal year begun December 29, 1968 and ended December 27, 1969."

(3) In settling the instant taxes, the Commonwealth's taxing officers in a block at the upper left-hand corner of the Settlement, crossed out a reference to a calendar year and completed the fiscal year portion with the language: "52-53 wk. 12-27-69".

(4) The official Settlements of capital stock tax and corporate net income tax were completed by the taxing officers of the Commonwealth as follows: "For the 1 year ended 12-27-69."

(5) The Commonwealth's own General Instructions to taxpayers for preparation of the Capital Stock-Loans-Corporate Net Income Tax Report provide in paragraph C thereof: "For corporations reporting on a 52-53 week fiscal year basis, the last day of the month rather than the varying 52-53 week date nearest the end of the month, should be considered the last day of the fiscal year."

6. The Commonwealth's only witness stated that Allentown had certified to the Commonwealth that it reported on the basis of "a fiscal filing period"; that Allentown reported to Pennsylvania on the same basis as it filed with the federal government; and that Allentown's Pennsylvania and federal "filing period is December 29, 1968 to December 27, 1969."

These admissions simply reinforce the statutory provisions that Allentown is on a fiscal year basis of accounting.

Our conclusion that this case should be decided on a question of statutory construction and decided favorably to the taxpayer makes it unnecessary to discuss or rule on the other questions raised by Allentown.

Following careful consideration of this interesting case, we make the following

## CONCLUSIONS OF LAW

1. Allentown Wholesale Grocery Company is on a fiscal year basis of accounting.

434

2. Allentown Wholesale Grocery Company's fiscal year here in question commenced December 29, 1968 and ended December 27, 1969.

3. The Commonwealth incorrectly resettled the 1968 fiscal year corporate net income tax and capital stock tax of Allentown Wholesale Grocery Company.

DECREE NISI

And now, this 25th day of May, 1972, the orders of July 28, 1971 of the Board of Finance and Revenue relative to Allentown Wholesale Grocery Company are reversed and the Commonwealth is directed to compute said company's corporate net income tax and capital stock tax for its fiscal year which commenced December 29, 1968 in accordance with this opinion and, when so calculated, judgment shall be entered for the Commonwealth in the amount so determined, together with any interest allowed by law and with a credit allowed to the said company for such amount, if any, as it has paid on such obligations, unless exceptions be filed hereto within thirty (30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.