389 A.2d 1144

**Darlene WRIGHT, Appellant (at No. 731),**

v.

**David ENGLE, Appellant (at No. 730).**

Superior Court of Pennsylvania.

Argued Nov. 21, 1977.

Decided July 12, 1978.

322

R. T. Mutzabaugh, Bradford, for appellant, at No. 730, and appellee, at No. 731.

Harold B. Fink, Jr., Coudersport, for appellant, at No. 731, and appellee, at No. 730.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

These appeals arise from a trespass action for damages caused when appellant-defendant's automobile struck the plaintiff's vehicle from behind. A jury, in the Common Pleas Court of Potter County, returned an itemized verdict for the appellee-plaintiff as follows:

"Loss of earning power - $20,000.00
Pain and suffering - 7,000.00
Medical bills - 3,140.60"

After defendant moved for a new trial, the lower court judge denied the motion subject to a remittitur of $2,110.20 to be filed by the plaintiff. The remittitur was filed, but defendant refused to pay the verdict. Plaintiff's motion to withdraw the remittitur was denied. Defendant appeals on the denial of the motion for new trial. Plaintiff cross appeals on the denial of the withdrawal of remittitur. We affirm the lower court.

In dealing with the defendant's appeal of whether the trial court abused its discretion in refusing to grant a new trial, we are faced with three questions: first, whether the issues raised were properly preserved for appeal; second, whether the lower court erred in charging on the impairment of earning power; third, whether the jury verdict was excessive in light of the evidence presented.

## I.

The law of Pennsylvania is that a specific exception must be taken at the trial level in order to preserve an issue for appeal. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 332 A.2d 114 (1974). In the case before us, appellant's counsel stated exceptions to the court's charge as follows:

"generally to the charge of the Court. Counsel for defendant also excepts specifically to the charge of the Court on loss of earning power, . . . and specifically to the charge of the Court on reducing any award to present worth."

The motion filed for new trial was generally that the verdict was against the law and the evidence and was excessive. Additional reasons for new trial were filed that specifically set forth, among others, the excessiveness of the award for loss of earning power, that there was no evidence to support the judge's charge on loss of earning power, and error in the failure to instruct the jury that the allowance for future earnings should be reduced to present worth at the interest rate of 6%.

We find that the objection to the charge by defendant's counsel concerning the loss of earning power was sufficient to identify that portion of the charge to which defendant excepted specifically. See *Leopold v. Davies,* 246 Pa.Super. 176, 369 A.2d 868 (1977) where exception to the numbers of the points for charge was held sufficient. This issue was properly preserved for appeal because the objection was to the fact that the charge was made at all.

The objection concerning the reduction of the verdict to present worth presents a different question because this part of the charge could have been corrected, or at least ruled upon, at the time of the trial. In this case, the judge charged that if the plaintiff was entitled to damages for loss of earning capacity, such damages had to be reduced to present worth. He defined present worth as:

> "A sum that when invested safely and prudently by an average investor at a conservative rate of interest would produce the amount which the injured person would have earned during the term of her productive life had she not received her injury." (R. 108a).

Counsel for defendant neither requested a specific instruction concerning the reduction to present worth at the lawful interest rate of 6%, nor did he object to the charge after it was made specifically concerning the omission of the 6% figure. Although the lower court believed the issues were waived for appeal, his opinion discussed the omission of the 6% as not a "material error of a degree or magnitude warranting a new trial." This discussion followed the con-

clusion that the charge on loss of earning power was properly before the jury and the verdict was not excessive.

In reducing future damages to present worth, Pennsylvania case law holds that the interest must be computed at the lawful rate of 6%. *Brodie v. Phila. Trans. Co.,* 415 Pa. 296, 203 A.2d 657 (1964); *Gregorius v. Safeway S. Scaffolds, Co.,* 409 Pa. 578, 187 A.2d 646 (1963); *Windle v. Davis,* 275 Pa. 23, 118 A. 503 (1922).

In *Gregorius,* supra, the judge charged the jury that they could determine the interest according to the rate currently available. Our Supreme Court held this was error and awarded a new trial, saying there was a need for standardization in the interest rate computations, and six per cent is the figure that must be used. Thus, under the Pennsylvania case law, it appears this omission of the 6% figure in the charge here if specifically objected to, is reversible error and a new trial must be awarded. But, see *Brodie v. Phila. Trans. Co.,* supra (Musmanno, J., Dissenting) and *Gregorius v. Safeway S. Scaffolds, Co.,* supra (Roberts, J., Dissenting). Unfortunately, however, in this case, counsel's failure to request a specific instruction before or after the charge, along with his failure to specifically object to this technical point waived the issue for consideration here.[1]

## II.

Defendant contends that there is no evidence presented by the plaintiff to support a charge to the jury on loss of earning power. In our review of the charge, we find the lower court made no error in the text of its instruction; i. e., the court properly instructed the jury on loss of earning power, considering all the factors affecting plaintiff's ability to earn money, and reduction of the award, if any, to present worth. There was sufficient evidence to submit a

1. This finding is consistent with the equities of the case and our further holdings that the charge on loss of earning capacity was correctly before the jury and the verdict was not excessive. See discussion infra.

charge on loss of earning power to the jury. The record reveals that Darlene Wright was thrown out of her car, as a result of the rear-end collision, and landed on her buttocks. Her doctor's testimony established she suffered acute cervical strain and that she could develop cervical arthritis. Plaintiff testified her backaches and severe headaches continued to the time of trial. Other witnesses testified to the personality change in the plaintiff. Before the accident, she was happy-go-lucky, active, and hard to keep up with. After the accident she was depressed, did not want to go out with her friends, and could not do some housework and other activities without pain. In *Herb v. Hallowell*, 304 Pa. 128, 154 A. 582, 85 A.L.R. 1004 (1931), our Supreme Court held it was correct to instruct the jury on impairment of earning power where a school teacher suffered head injuries, dizziness, headaches and nausea even though she returned to her job. Additional support for this position is *Messer v. Beighley*, 409 Pa. 451, 187 A.2d 168 (1963), where the medical witness testified the injuries were not permanent but "chronic" with recurrent episodes of pain. The court said the jury should have been instructed on impairment of earnings. See also *De Marco v. Frommyer Brick Co.*, 203 Pa.Super. 486, 201 A.2d 234 (1964).

The fact that appellee returned to work and made more money than she had prior to the accident does not take the point of impairment of earning power from the jury.

"The consideration of loss of earning capacity is not solely the comparative amount of money earned before or after an injury. The true test is whether or not there is a loss of earning power, and of ability to earn money." *Mazi v. McAnlis*, 365 Pa. 114, 121, 74 A.2d 108, 112 (1950).

In *DiChiacchio v. Rockcraft Stone Prod. Co.*, 424 Pa. 77, 225 A.2d 913 (1967), plaintiff suffered a concussion with recurrent dizziness and irritability due to a plank hitting him on the head as he walked down the street. Although plaintiff did not suffer a diminution in wages, the court found that

the fact that wages may increase does not necessarily reflect whether there has been an impairment of earning ability. *Bochar v. Martin Motors,* 374 Pa. 240, 97 A.2d 813 (1953). "A tortfeasor is not entitled to a reduction in his financial responsibility because, through fortuitous circumstances or unusual application on the part of the injured person, the wages of the injured person following the accident are . . higher than they were prior to the accident." *DiChiacchio,* 424 Pa. at 82, 225 A.2d at 915 citing *Bochar,* supra.

*DiChiacchio,* supra, also addressed the question whether the prolonged intangible discomfort of irritability and changed personality were related to earning power. In answering the question in the affirmative, the court cited *Corcoran v. McNeal,* 400 Pa. 14, 23, 161 A.2d 367 (1960), 424 Pa. at page 85, 225 A.2d at page 917 when saying

> "[T]he loss of well-being is as much a loss as an amputation. The inability to enjoy what one has heretofore keenly appreciated is a pain which can be equated with the infliction of a positive hurt."[2]

Thus, in *DiChiacchio* the original verdict of $25,000 for the injured plaintiff was reinstated. In applying this line of cases to the facts before us, we feel the charge on the impairment of earning capacity was supported by the evidence and properly before the jury.[3]

### III.

The final issue is whether the jury verdict was excessive in light of the evidence presented. "Where a verdict has been sustained by the lower court, an appellate court

**2.** See also *Frankel v. Todd,* 393 F.2d 435 (3d Cir. 1968) and the excellent discussion of Pennsylvania law on this point therein.

**3.** Appellant relies on *Kmiotek v. Anast,* 350 Pa. 593, 39 A.2d 923 (1944) and *Caroll v. Pittsburgh Railway Company,* 200 Pa.Super. 80, 187 A.2d 293 (1962) in his argument on this point. However, the distinguishing fact in those cases is that there was positive medical testimony that the injured plaintiff had fully recovered. Such is not the case here.

will generally not reverse unless the verdict is so grossly excessive as to shock the appellate court's sense of justice." *Kemp v. Phila. Transp. Co.,* 239 Pa.Super. 379, 382, 361 A.2d 362, 364 (1976). Appellate courts are reluctant to interfere with a verdict where it is based on the jury's determination of the facts as applied in a particular case. *Huey v. Blue Ridge Transp. Co.,* 350 Pa. 488, 491, 39 A.2d 602 (1944).[4]

We conclude in the instant case that the jury verdict does not shock the court's sense of justice when considering the plaintiff's young age, expected work life expectancy, and medical testimony on her condition. *See Smith v. Coy,* 460 F.2d 1226 (3d Cir. 1972); *Wiles v. N.Y., Chicago and St. Louis R.R. Co.,* 283 F.2d 328 (3d Cir. 1960).

Order denying defendant's new trial affirmed.

## IV.

## CROSS APPEAL

Plaintiff becomes the appellant on the issue of the remittitur filed upon the order of the lower court. Defendant filed a motion for new trial on the claim that the verdict awarded by the jury was excessive. The trial court denied defendant's motion upon the condition that plaintiff remit part of the medical expenses awarded, thereby reducing them from $3,140.60 to $1,030.40. Plaintiff filed the remittitur pursuant to the court order, but defendant failed to pay the verdict. Plaintiff's motion to withdraw the remittitur was denied. The cross appeal argues the remittitur should not have been granted but that plaintiff is entitled to the entire verdict as awarded by the jury.

4. In *Kemp v. Phila. Transp. Co.,* supra, we outlined relevant factors that should be considered by courts in determining whether a verdict is excessive. They include the severity of the injury, whether the injury is demonstrated by physical or subjective evidence, whether the injury will permanently affect plaintiff; plaintiff's ability to continue employment, the amount of the out of pocket expenses, and the amount of damages demanded in the suit.

When a defendant files motions for new trial on the basis of excessiveness of the verdict, the trial judge may reduce the verdict through the order of a remittitur. The trial judge's action is discretionary. *Corabi v. Curtis Publishing Co.*, 437 Pa. 143, 262 A.2d 665 (1969). Once a remittitur is ordered, the plaintiff has the option of entering the remittitur, suffering a new trial, or appealing the court's order which would grant a new trial if the remittitur is not filed. If the plaintiff consents to the remittitur and files it, he has no standing to challenge the remittitur on appeal. *Gough v. Halperin*, 306 Pa. 230, 159 A. 447 (1932); *Clarkson v. Crawford*, 285 Pa. 299, 132 A. 350 (1926). The rationale behind this is that the discretionary act of the trial judge in granting the remittitur is out of fairness to the verdict winner in order to expedite the matter and save the expenses of a new trial or appeal. *Corabi v. Curtis Publishing Co.*, supra. See also 5 C.J.S. Appeal and Error § 1511; 6A Stand.Pa.Prac. 167, 278 (1960).

By plaintiff's filing of the remittitur in this case, she exercised her option under the circumstances to acquiesce in the court's order. She cannot question the fact that the order was given. It may be argued that it was an abuse of discretion for the trial judge to refuse to withdraw the remittitur. However, it has been held that once an unconditional remittitur is entered, a judgment on the original verdict cannot be entered even when the defendant fails to pay the reduced verdict. *Meyers v. Tygh*, 75 Pa.Super. 271 (1920). Thus plaintiff's appeal from the remittitur must be dismissed. See *Corabi v. Curtis Publishing Co.*, supra. (Pomeroy, J., Dissenting).

WATKINS, former President Judge, did not participate in the consideration or decision of this case.